Virl EARLES, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant. (Two Cases)

Marie KATZ, individually and as the personal representative of Ronald Flem Myers, deceased, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellant.

v.

Virl EARLES, Third–Party Defendant. (Two Cases)

Ernest E. CHAVEZ; Carol Kemble; Terez Ujj, individually and as the representative of the Estate of John Bakos; Roberta D. Hulings, individually and as the representative of the Estate of Patricia Hulings; Robert Weaver, Jack Thomas Schmid, Estelle Schmid, individually, and Jack Thomas Schmid, Jr., as administrator of the Estate of Kathy Weaver, Plaintiffs–Appellees,

v.

UNITED STATES of America DEPARTMENT OF DEFENSE, United States of America Department of the Navy, United States of America Army Corps of Engineers, United States Coast Guard, Defendants–Appellants. (Two Cases)

Stephen BRENNAN, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellant,

v.

Virl EARLES, Third–Party Defendant. (Two Cases)

Stephen BRENNAN, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellant,

v.

Virl EARLES, Third–Party Defendant. (Two Cases)

Marlene SUTTON, and Richard Sutton, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellant,

v.

Virl EARLES, Third–Party Defendant. (Two Cases)

Ernest E. CHAVEZ; Carol Kemble; Terez Ujj, individually and as the representative of the Estate of John Bakos; Roberta D. Hulings, individually and as the representative of the Estate of Patricia Hulings; Robert Weaver, Jack Thomas Schmid, Estelle Schmid, individually, and Jack Thomas Schmid, Jr., as the administrator of the Estate of Kathy Weaver, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellant,

v.

Virl EARLES, Third–Party Defendant. (Two Cases)

Nos. 88–6203 to 88–6205, 88–6208, 88–6220, 88–6221, 88–6223, 88–6461, 88–6465, 88–6470, 88–6472 to 88–6475.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1990.

Decided June 6, 1991.

Mark D. Wenzel, Stone & Dolginer, Los Angeles, Cal., for plaintiffs-appellees Marlene and Richard Sutton.

Thomas C. King, Gauhan and King, Long Beach, Cal., for plaintiff-appellee Marie Katz.

Neal Hirschfeld, North Miami Beach, Fla., for Ernest E. Chavez et al.

John L. Norman, Santa Ana, Cal., for plaintiff-appellee Stephen Brennan.

Alan G. Martin, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for plaintiffs-appellees.

Before BROWNING, PREGERSON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

This is a case of first impression in which we are called upon to resolve the question whether the so-called Discretionary Function Exception ("Exception") to the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 2680(a) (1988), applies to the Suits in Admiralty Act ("SIAA"), 46 U.S.C. App. §§ 741–752 (1988). We now join with the majority of other circuits to have decided this issue and hold that the Exception is applicable to the SIAA.

### FACTS AND PROCEEDINGS

On October 27, 1984, Tony Sutton borrowed a 20′ jet ski boat, the WHISKEY RUNNER, from a local boat dealer in Long Beach, California. That evening he and four friends, Virl Earles, John Bakos, Ernest Chavez and Ronald Myers, sailed the WHISKEY RUNNER to a party at a restaurant located on the inland channel of Huntington Harbor. Around 1:30 a.m. these five individuals, along with Stephen Brennan, Patricia Hulings, Carol Kemble and Kathy Weaver, boarded the WHISKEY RUNNER and sailed through the Huntington Harbor's inland waterway. They exited through the channel designated for recreational boats at the United States Naval Weapons Station at Seal Beach, Huntington Harbor, and proceeded down the

Warren A. Schneider, Asst. Atty. in Charge, Jeanne M. Franken, Trial Atty., West Coast Office, Torts Branch, Civ. Div., San Francisco, Cal., for defendant-appellant.

channel through Anaheim Bay and out into the Pacific Ocean. The nine passed through Long Beach Harbor to view the QUEEN MARY, then returned to Huntington Harbor around 3:00 a.m.

The WHISKEY RUNNER, with Earles at its helm, entered Huntington Harbor at a high rate of speed, subsequently calculated at 40–45 miles per hour (the local speed limits ranged between 3 and 8 knots), and struck Oscar 8, an unilluminated Navy mooring buoy. The boat sank immediately. Bakos, Hulings, Myers, Sutton and Weaver died in the allision, while the four survivors suffered varying degrees of injury. A sobriety test administered to Earles several hours later revealed a blood-alcohol level of .11%.

Robert and Marilyn Sharp, the owners of the WHISKEY RUNNER; Sundown Marine, the local dealer from whom Sutton had borrowed the boat; and Sundown Marine's owner, Robert Long,[1] commenced what developed into the instant litigation by filing petitions for exoneration from or limitation of liability in federal district court. Numerous additional actions were subsequently filed against the United States by the survivors and the decedents' representatives, all seeking damages under the SIAA based on the Navy's alleged negligence for failing, *inter alia*, to illuminate Oscar 8. The government impleaded Earles and, following stipulations for exoneration from liability on the part of the Sharps, Sundown Marine, and Long, the district court consolidated the remaining actions for trial. In bifurcated proceedings, the district court found the United States and Earles to have been equally negligent and jointly and severally liable for damages totalling $2,206,091.19, less Earles' offset contribution of $148,770.00, representing 50% of his damage award. The United States has timely appealed.

## DISCUSSION

### I

 Although the government has advanced several claims of error, the crux of its argument on appeal is that the district court erred by failing to hold that the Discretionary Function Exception applies to the SIAA and would preclude recovery under the facts of this case. The district court's ruling that the Exception does not apply to the SIAA is a legal conclusion based on statutory construction and is subject to *de novo* review. *See Price v. Hawaii*, 921 F.2d 950, 954 (9th Cir.1990).

The Discretionary Function Exception is a qualification to the general waiver of sovereign immunity granted by the FTCA. The Exception states, in relevant part, that a claim cannot be maintained against the United States when that claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1988). *Cf. Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1026–27 (9th Cir.1987) (Discretionary Function Exception to Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5)(A)), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

"[T]he discretionary function exception is based on a 'combination of the doctrines of sovereign immunity and separation of powers.'" *Gordon v. Lykes Bros. S.S. Co.*, 835 F.2d 96, 99 (5th Cir.) (quoting *Wiggins v. United States, through Dep't of Army*, 799 F.2d 962, 965 (5th Cir.1986)), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988). *Accord, Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1021 (9th Cir.1989) ("[g]rounded in separation of powers concerns"). The second of these considerations is "a doctrine to which the courts must adhere even in the absence of an explicit statutory command." *In re Joint E. & S. Dists. Asbestos Litigation*, 891 F.2d 31, 35 (2d Cir.1989) (internal quotations and citation omitted).

---

**1.** The Sharps had traded in the WHISKEY RUN-NER as a down payment on a new boat at Sundown Marine, but the formal transfer of title to the WHISKEY RUNNER had not taken place as of the date of the accident.

In deciding whether and how to apply the Exception, the Supreme Court has offered the following guidance:

> First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... [T]he basic inquiry ... is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.
>
> Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.... Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813–14, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984) (discussing the Exception in the context of the FTCA).

Thus, where challenged conduct involves an element of judgment grounded in social, economic or political policy, the Exception should apply and preclude judicial "second-guessing" by barring the exercise of jurisdiction over the claim. *See Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir.1990) (FTCA claim); *Kennewick Irrigation Dist.*, 880 F.2d at 1024–25 (same; discussing distinction between economic considerations and economic policy); *Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1504 (9th Cir.1989) (FTCA claim).

Unlike the FTCA, however, the SIAA does not expressly immunize the government for the exercise of a discretionary function. *Sheridan Transp. Co. v. United States*, 897 F.2d 795, 798 n. 2 (5th Cir.1990). However, the omission of the Exception from the SIAA does not necessarily mean that the SIAA is not subject to it. As the Second Circuit has noted,

> The exception was drafted merely as a "clarifying amendment" to the FTCA, *Dalehite v. United States*, 346 U.S. 15, 26 [73 S.Ct. 956, 963, 97 L.Ed. 1427] (1953), since Congress "believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction." *Varig Airlines*, 467 U.S. at 810, 104 S.Ct. at 2762.

*In re Joint E. & S. Dists. Asbestos Litigation*, 891 F.2d at 35. *Accord, Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988) (citing and quoting *Dalehite* and *Varig Airlines*). *See also Kennewick Irrigation Dist.*, 880 F.2d at 1022–23 (discussing *Dalehite, Varig Airlines* and *Berkovitz* in context of Discretionary Function Exception under FTCA).

Although this circuit has not yet decided whether the Exception should be read into the SIAA, *see e.g., Wong Wing Fai Co., S.A. v. United States*, 840 F.2d 1462, 1470 n. 18 (9th Cir.1988); *Huber v. United States*, 838 F.2d 398, 400 & n. 1 (9th Cir. 1988), every circuit but one [2] to have considered the question has found the Exception applicable to the SIAA. *See Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1085–87 (D.C.Cir.1980); *Gercey v. United States*, 540 F.2d 536, 539 (1st Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977); *In re Joint E. & S. Dists. Asbestos Litigation*, 891 F.2d at 35; *Sea–Land Serv., Inc. v. United States*, 919 F.2d 888, 891 (3d Cir.1990); *Wiggins*, 799 F.2d at 965–66; *Gemp v. United States*, 684 F.2d 404, 408 (6th Cir.

---

**2.** In *Lane v. United States*, 529 F.2d 175, 179 (4th Cir.1975), the Fourth Circuit found no immunity from liability on the part of the Coast Guard under the SIAA for what the court held to have been an abuse of discretion. However, the Fourth Circuit retreated from this stance eight years later in *Faust v. South Carolina State Hwy. Dep't*, 721 F.2d 934, 938–39 (4th Cir.1983), *cert.*

*denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), and at least two other circuits have interpreted *Faust* as implying that the Fourth Circuit would now read the Discretionary Function Exception into the SIAA. *See In re Joint E. & S. Dists. Asbestos Litigation*, 891 F.2d at 35; *Wiggins*, 799 F.2d at 965.

1982); *Bearce v. United States*, 614 F.2d 556, 559–60 (7th Cir.), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Williams v. United States*, 581 F.Supp. 847, 852 (S.D.Ga.1983), *aff'd on opinion below*, 747 F.2d 700 (11th Cir. 1984). In addition, at least two district courts of this circuit have found the Exception applicable to the SIAA. *See Olympia Sauna Compania Naviera, S.A. v. United States*, 670 F.Supp. 1498, 1503–04 (D.Or. 1987); *Rappenecker v. United States*, 509 F.Supp. 1024, 1027 (N.D.Calif.1980).

The reasoning of these other courts was perhaps best summarized by the Second Circuit:

> Were we to find the discretionary function exception not to be applicable to the S[I]AA, we would subject all administrative and legislative decisions concerning the public interest in maritime matters ... to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries.

*In re Joint E. & S. Dists. Asbestos Litigation*, 891 F.2d at 35 (internal quotations and citations omitted).

■■ We agree with this reasoning and conclude that this circuit should now join with the D.C., First, Second, Third, Fifth, Sixth, Seventh and Eleventh Circuits and hold that the Discretionary Function Exception applies to the SIAA as well as to the FTCA. Because the district court held to the contrary, we must vacate its judgment and remand for a determination whether the Exception *should* apply to bar recovery under these facts. On remand, the district court must resolve the question whether the Navy could properly rely on the Coast Guard's decision to illuminate or otherwise mark only 27 of the 1,436 mooring buoys in Southern California, not including Oscar 8, and whether that decision was a discretionary act based on policy considerations that would preclude recovery to the appellees. *See Kennewick Irrigation Dist.*, 880 F.2d at 1024–25.

Because of our holding on this issue, we need not and do not reach the merits of the parties' arguments concerning negligence,

either on the part of the government as the cause of, or on the part of the passengers as contributing factors to, the accident. For the same reason we decline the government's invitation to review the district court's various damage awards, although we note that the Supreme Court has recently spoken on the issue of loss of society damages in general maritime wrongful death actions. *See Miles v. Apex Marine Corp.*, —— U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

VACATED AND REMANDED.

PREGERSON, Circuit Judge,
Dissenting:

I dissent. The majority holds that the discretionary function exception may be invoked in cases brought under the Suits in Admiralty Act, and remands to allow the district court to determine whether the exception should apply in this particular case. Because I believe the exception does not apply to the facts of this case as a matter of law, I would affirm the district court's decision.

As the majority recognizes, the discretionary function exception is designed "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

For the exception to apply in this case, the government must show (1) that the challenged action involved a matter of choice for a government official—that is, that the official *exercised* discretion and (2) that the decision is the sort of judgment the exception was designed to shield. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); *Summers v. United States*, 905 F.2d 1212, 1214 (9th Cir.1990). The Government has failed on both counts.

First, the government has failed to show that its failure to light the mooring buoy was a "decision" at all. The government

has offered no evidence that suggests that any official was ever faced with the question whether to light some buoys but not others, or made a decision between certain costs and competing safety concerns. Moreover, the fact that the government may have allocated funds to finance certain safety measures is not in itself a policy decision. *See ARA Leisure Services v. United States,* 831 F.2d 193, 195–196 (9th Cir.1987). Absent an actual decision by a government official regarding the lighting of the buoys, the exception simply does not apply. *See Dube v. Pittsburgh Corning,* 870 F.2d 790, 799–800 (1st Cir.1989).

Second, even if the government made some decision regarding the lighting of the buoys, we have previously held that the government's failure to post warning signs regarding dangerous conditions or obstacles on government property is not the sort of judgment that the discretionary function exception was designed to shield.

In *Summers v. United States,* for instance, a young girl was injured when she burned her foot on hot coals inside a fire ring on a National Park beach. We concluded that the National Park Service's failure to warn visitors of such danger by placing signs near the fire rings did not fall within the exception because the Park Service had simply failed to act, and had not made any choices between competing political, economic, and social factors. *Id.,* 905 F.2d at 1216.

Similarly, in *Seyler v. United States,* 832 F.2d 120 (9th Cir.1987) we held that the exception did not apply to the Bureau of Indian Affairs' failure to erect speed limit signs on an Indian reservation roadway. The plaintiff in *Seyler,* like appellees in this action, was injured while taking a pleasure ride on a federal thoroughfare. We concluded there was no evidence that the BIA's failure to post signs resulted from a decision ground in social, economic or political policy. *Id.,* 832 F.2d at 122. Indeed, we doubted "that any decision not to provide adequate signs would be 'of the nature and quality that Congress intended to shield from tort liability.'" *Id., quoting*

*Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764.

Here, the government's failure to light or otherwise mark the mooring buoy into which the boaters crashed is analogous to the failure to post warning or speed limit signs. It is simply not the sort of policy judgment the exception was designed to shield. Thus, even if the government were able to point to an actual decision regarding the lighting of the buoys, that decision should not trigger the discretionary function exception. Accordingly, I dissent.