**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OSWALDO ENRIQUE TOBAR; ROSA
CARMELINA ZAMBRANO LUCAS;
JUNIOR IVAN PICO ALAVA; SEGUNDO
MATIAS ZAMBRANO ALONZO;
FRANCISCO GABRIEL YOLE ARTEAGO;
FAUSTO LUPERCIO ARIAS
CASTANEDA; FRABRICIO BAYRON
CEDENO; JOFFRE JOHNNY CEDENO
CEDENO; LINDON CLEOFE CEDENO
CEDENO; RAMON ELIADES RAMON
VELEZ CEDENO; DANIEL DAVID
QUIMI CHALEN; PABLO EDUARDO
LUCAS CONFORME; RAMON EDUARDO
PILLIGUA CONFORME; CIRO MARIANO
LOPEZ MERO; PEDRO MANUEL
LOPEZ MERO; JOSE EDUARDO LUCAS
MERO; LUIS ANTONIO PENAFIEL
MERO; PEDRO JOSE REYES MERO;
TELMO ARCADIO CHICA OBANDO;
LUIS MIGUEL CEDENO PICO; JAIME
GUSTAVO PALMA PINARGOTE; YARDY
KLEVER FLORES SEGOVIA; PACHO
HERNANDEZ SOLORZANO; CARLOS
WILFRIDO VELIZ VELEZ; CARLOS
ORLANDO VELEZ ZAMBRANO, and
JOSE LUIS ZAMBRANO, ZAMBRANO,
          *Plaintiffs-Appellants,*

No. 08-56756

D.C. No.
3:07-cv-00817-
WQH-WMC

OPINION

v.

UNITED STATES OF AMERICA,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued February 4, 2010
Resubmitted March 22, 2011
Pasadena, California

Filed April 21, 2011

Before: Betty B. Fletcher, Harry Pregerson, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Walter L. Boyaki, Miranda & Boyaki, El Paso, Texas, for the plaintiffs-appellants.

R. Scott Blaze and R. Michael Underhill, United States Department of Justice, San Francisco, California, for the defendant-appellee.

# OPINION

GRABER, Circuit Judge:

Plaintiffs are Ecuadorian crew members of a fishing boat. The United States Coast Guard saw their boat in international waters near the Galapagos Islands and suspected it of involvement with smuggling drugs. The Coast Guard stopped Plaintiffs' boat and boarded it. Tests performed on the vessel yielded suspicious but inconclusive results and, with the consent of the Ecuadorian government, the Coast Guard towed the boat to Ecuador. Further tests conducted by the Ecuadorian government uncovered no contraband, and no charges were filed against Plaintiffs.

Plaintiffs then sued the United States for damages resulting from these events. The district court held that the United States had not waived its sovereign immunity over this action and, accordingly, dismissed the action. Reviewing de novo, *Harger v. Dep't of Labor*, 569 F.3d 898, 903 (9th Cir. 2009), we affirm in part, vacate in part, and remand.

## FACTUAL AND PROCEDURAL HISTORY

Because the district court dismissed this action on the pleadings, we take as true the allegations of the complaint. *Cell Therapeutics Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1206 n.2 (9th Cir. 2010). Plaintiffs allege that, "[o]n or about October 5, 2005 in international waters off the Galapagos Islands in the Pacific Ocean the agents of the [United States] unlawfully and negligently, stopped, searched, arrested, detained and imprisoned the Plaintiffs, seized the boat, destroyed the cargo and fish owned by [some] Plaintiffs . . . for allegedly smuggling and possessing illegal drugs." Plaintiffs seek damages of slightly more than $5 million for unlawful imprisonment, humiliation, pain and suffering, destruction of personal property, loss of their catch, loss of the use of the vessel, and public ridicule.

The United States filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the ground that the United States has not waived sovereign immunity. The district court agreed and dismissed this action. Plaintiffs timely appeal.

## DISCUSSION

The primary question before us is whether the United States has waived sovereign immunity. "We will consider the issue of sovereign immunity on the merits because it can be raised at any time by the government, as it goes to a court's jurisdiction." *IRS v. Fed. Labor Relations Auth.*, 521 F.3d 1148, 1152 (9th Cir. 2008).[1]

[1] "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation, alterations, and internal quotation marks omitted). The waiver of sovereign immunity is a prerequisite to federal-court jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "[L]imitations and conditions upon which the [United States] Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957). "Federal sovereign immunity insulates the United States from suit 'in the absence of an express waiver of this immunity by Congress.' " *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting

---

[1]It is therefore irrelevant that, as Plaintiffs contend, the United States failed to assert with specificity the affirmative defense of sovereign immunity in its answer to the original complaint. Nor was it improper for the district court to consider the affidavits submitted by both parties; indeed, that is the correct procedure for jurisdictional challenges raised in a Rule 12(b)(1) motion. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 280 (1983)).

In their complaint, Plaintiffs offered a number of sources of an alleged waiver of sovereign immunity by the United States. Plaintiffs also filed a motion to amend their complaint to add two additional sources. The district court denied the motion on the ground that the proposed amendment could not cure the sovereign-immunity defect. Like the district court, we consider all sources. Those sources include: the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101-31113; the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 30901-30918;[2] the Federal Tort Claims Act ("FTCA"); the Alien Tort Statute, 28 U.S.C. § 1350; the Military Claims Act, 10 U.S.C. §§ 2731-2739; a regulation, 49 C.F.R. § 1.46(b); the Convention on the Law of the Sea; the International Covenant on Civil and Political Rights ("ICCPR"); a bilateral treaty between Ecuador and the United States concerning the use of an Air Force base at Manta, Ecuador; and a letter from the United States embassy to the Ecuadorian government requesting permission to board Plaintiffs' vessel.

A.   *Non-Congressional Sources*

The regulation and the letter are not acts of Congress, so they cannot effect a waiver of sovereign immunity. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 934 (9th Cir. 2009). Additionally, we note that the regulation contains no relevant information and does not pertain to sovereign immunity. Similarly, the letter does not mention sovereign immunity and, as noted, even if it implies that sovereign immunity would be waived, implied waivers are ineffective. *Mitchell*, 445 U.S. at 538.

---

[2]Until recently, these two Acts were codified at 46 U.S.C. §§ 781 *et seq.* (PVA) and 46 U.S.C. §§ 741 *et seq.* (SAA). We use the present-day numbering.

B.   *Military Claims Act, Alien Tort Statute, and Treaties*

The Military Claims Act does not mention, and therefore does not waive, sovereign immunity. *See Murphy ex rel. Estate of Payne v. United States*, 340 F. Supp. 2d 160, 171 (D. Conn. 2004) ("The [Military Claims Act] does not waive the Government's sovereign immunity, but instead merely authorizes the Secretary to settle claims (including disallowing claims) at his or her discretion and under such regulations as the Secretary may prescribe."), *adopted*, 427 F.3d 158, 159 (2d Cir. 2005) (per curiam) ("We affirm on the well-reasoned opinion of the District Court.").

"[T]he Alien Tort Statute has been interpreted as a jurisdiction statute only—it has not been held to imply any waiver of sovereign immunity." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992) (citing *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985); *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1092 (D.C. Cir. 1980)). "Thus, any party asserting jurisdiction under the Alien Tort Statute must establish, independent of that statute, that the United States has consented to suit." *Id.*

The United States has signed, but has not ratified, the Convention on the Law of the Sea. In the absence of congressional action, the Convention does not waive sovereign immunity.

The United States has ratified the ICCPR. But that treaty is not self-executing and therefore "did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).

Finally, the bilateral treaty concerning the Air Force base at Manta, Ecuador, concerns, naturally enough, the Air Force base at Manta, Ecuador, which played no part in the Coast Guard's actions here. The treaty does not mention the Coast Guard, payment for the types of damage alleged by Plaintiffs,

judicial remedies, or sovereign immunity. That being so, the treaty does not waive the United States' sovereign immunity.

C. *The Public Vessels Act, Suits in Admiralty Act, and Federal Tort Claims Act*

**[2]** Each of these three Acts provides an explicit waiver of sovereign immunity. The PVA waives sovereign immunity for suits for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). But the PVA contains a reciprocity requirement: A national of a foreign country may sue under the PVA only if the government of that foreign country would permit a United States national to bring the same suit in its courts. *Id.* § 31111. The SAA waives sovereign immunity, subject to some exceptions, in admiralty cases when a civil action could otherwise be brought if the United States were not a party. *Id.* § 30903(a); *see Earles v. United States*, 935 F.2d 1028, 1032 (9th Cir. 1991) (recognizing a "discretionary function exception" to that waiver). Finally, the FTCA waives sovereign immunity in tort actions brought against the United States, subject to certain exceptions listed in 28 U.S.C. § 2680.

Because each of those three Acts provides a separate, explicit waiver of sovereign immunity, one might expect that any of the three waivers would suffice. For example, one would think that a claim brought under the SAA could proceed if the waiver requirements for that Act were met. For historical reasons, however, that is not how the Acts work together.

In *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 170-81 (1976), the Supreme Court explained the relevant history. The Court concluded that a plaintiff who brings an admiralty claim that falls within the scope of the PVA *must* meet the PVA's reciprocity requirement, even though the text of the SAA suggests that a claim brought under the SAA need not meet that requirement. *Id.* at 181. In

*Taghadomi v. United States*, 401 F.3d 1080, 1089-90 (9th Cir. 2005), we held that the same reasoning applies to potential claims under the FTCA. In short, if a claim falls within the scope of the PVA, the plaintiff *must* meet the reciprocity requirement of the PVA, regardless of the type of claim the plaintiff asserts—PVA, SAA, or FTCA. We turn, then, to whether Plaintiffs' claims fall within the scope of the PVA.

D.   *Whether Plaintiffs' Claims Fall Within the Scope of the PVA*

**[3]** A claim falls within the scope of the PVA if the claim comes within federal admiralty jurisdiction and if the damages were caused by a public vessel. *Taghadomi*, 401 F.3d at 1083. To come within federal admiralty jurisdiction, "the tort must occur on or over navigable waters" ("locality requirement"), and "the actions giving rise to the tort claim must bear a significant relationship to traditional maritime activity" ("nexus requirement"). *Id.* at 1084 (internal quotation marks omitted). Plaintiffs' claims are that Coast Guard personnel committed a number of torts when the Coast Guard boarded their vessel on the high seas, inspected it, and towed it to mainland Ecuador.

1.   *Locality Requirement*

**[4]** "[T]he situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs." *Id.* at 1084. As in *Taghadomi*, Plaintiffs here "do not claim that the injuries occurred anywhere but at sea. Thus, the locality requirement is satisfied." *Id.* at 1086. Even if one construed Plaintiffs' allegations as encompassing some negligent activity elsewhere, we have held that it is "clear that this rule [that the place where the injury occurs controls] holds even when some of the negligent activity occurs on land." *Id.* at 1084.

## 2. *Nexus Requirement*

**[5]** There are two prongs to the nexus requirement. First, a court "must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (citation and internal quotation marks omitted). "Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotation marks omitted).

**[6]** The incident in dispute did not merely have the potential to disrupt maritime commerce; it definitely disrupted maritime commerce. According to the operative complaint, the Coast Guard ruined Plaintiffs' commercial fishing trip and towed them and their boat hundreds of miles. Thus the first prong is easily met. *See, e.g.*, *Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978, 982-83 (9th Cir. 2007) (holding that an assault on a seaman by his former maritime employer aboard a vessel in navigable waters had the potential to disrupt maritime commerce because it rendered the seaman unable to fish); *Taghadomi*, 401 F.3d at 1086 (holding that this test was met where kayakers fell overboard and a rescue mission was attempted, because the "efficacy of search-and-rescue operations has a direct effect on the health and lives of seamen").

**[7]** The second prong, which we have interpreted broadly, likewise is easily met. In *Gruver*, 489 F.3d at 984-86, for instance, a seaman was assaulted by a former maritime employer while the seaman slept in his ship, docked at a pier. The origin of the dispute lay in allegedly unpaid wages by the former employer. *Id.* We held that the lens through which to examine the relevant activity was the underlying wage dispute; because that dispute concerned *maritime* wages, the second prong was met. *Id.*; *see also Mission Bay Jet Sports, LLC v. Colombo (In re Mission Bay Jet Sports, LLC)*, 570 F.3d

1124, 1129 (9th Cir. 2009) (holding that a jet-ski injury met the second prong because the activity in question—"operating a vessel in navigable waters"—"has a maritime connection"). The activity here, whether characterized as a fishing expedition or as a drug search on the high seas, meets the second prong, because "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc.*, 513 U.S. at 534 (internal quotation marks omitted).

### 3.   *"Damages Caused by a Public Vessel"*

**[8]** The PVA waives sovereign immunity for suits for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). "A 'public vessel' is one owned or operated by the United States and used in a public capacity." *Taghadomi*, 401 F.3d at 1083 n.3. It is undisputed that the Coast Guard ship at issue here is a "public vessel." But Plaintiffs argue that the PVA does not apply because the damages caused by the actions of the Coast Guard crew, especially those actions taken while aboard the Ecuadorian ship, are not "damages caused by a public vessel."

For decades, we—and the Supreme Court—have interpreted that phrase broadly. Indeed, 60 years ago we interpreted the phrase "damages caused by a public vessel" to encompass *all* tort and contract claims "aris[ing] out of the possession or operation of the ship." *Thomason v. United States*, 184 F.2d 105, 107 (9th Cir. 1950). "The phrase includes damages arising from those acts for which a private ship is held legally responsible as a juristic person under the customary legal terminology of the admiralty law." *Id.* at 107-08. We held, for instance, that "unpaid compensation for seamen's services" were "damages caused by a public vessel." *Id.* at 108.

Similarly, in *American Stevedores, Inc. v. Porello*, 330 U.S. 446, 448-54 (1947), the Supreme Court held that a longshore-

man's claim for personal injury resulting from the fall of a beam, negligently secured by a federal employee, constituted "damages caused by a public vessel." *See also id.* at 453 (recognizing "the growing feeling of Congress that the United States should put aside its sovereign armor in cases where federal employees have tortiously caused personal injury or property damage"). In *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 224-25 (1945), the Court rejected a reading of the PVA that would have related only to collisions and held that the PVA "extends to cases where the negligence of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargoes, and personnel, regardless of physical contact between the two ships." More recently, we held that a claim alleging a negligent search by a Coast Guard ship fell within the scope of the PVA's "damages caused by a public vessel" requirement. *Taghadomi*, 401 F.3d at 1088.

[9] Given our broad interpretation of the phrase,[3] we conclude that Plaintiffs' claims here assert "damages caused by a public vessel." Taking the allegations of the complaint as true, the crew of the public vessel stopped Plaintiffs' ship on the high seas, boarded it, damaged the cargo and other property, and towed the ship to Ecuador. Although the public vessel itself played a direct role only in some of the actions (stopping and towing Plaintiffs' ship), the public vessel's role in all of the actions of the crew is unmistakable. Even the actions of the crew members while aboard Plaintiffs' private ship "ar[ose] out of the possession or operation of the ship."

---

[3]We recognize that the Eleventh Circuit has disagreed with our broad reading of the PVA. *See Marine Coatings of Ala. v. United States*, 71 F.3d 1558, 1563-64 (11th Cir. 1996) (stating that our interpretation "is by far the broadest reading any court has given the Public Vessels Act"); *see also Uralde v. United States*, 614 F.3d 1282, 1286-88 (11th Cir. 2010) (concluding that the PVA does not apply where the crew of a public vessel boards a plaintiff's private vessel). As a three-judge panel, we are bound by the broader interpretation dictated by our precedents. *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc).

*Thomason*, 184 F.2d at 107. The PVA "extends to cases where the negligence of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargoes, and personnel, regardless of physical contact between the two ships." *Canadian Aviator*, 324 U.S. at 224-25. The relevant operation of the vessel here is not simply the movements of the public vessel itself; the relevant operation is the Coast Guard's search and seizure of Plaintiffs' vessel on the high seas. *Thomason*, 184 F.2d at 107-08. In conclusion, we agree with the district court that Plaintiffs' claims fall within the PVA's requirement of "damages caused by a public vessel."

E.   *The PVA's Reciprocity Requirement*

**[10]** The PVA's waiver of sovereign immunity is conditioned on the following reciprocity requirement:

> A national of a foreign country may not maintain a civil action under this chapter unless it appears to the satisfaction of the court in which the action is brought that the government of that country, in similar circumstances, allows nationals of the United States to sue in its courts.

46 U.S.C. § 31111. The district court held that the documents submitted by Plaintiffs—an affidavit by an Ecuadorian lawyer and a translated copy of the Ecuadorian constitution—were insufficient to establish that reciprocity exists. We agree.

**[11]** The documents say nothing about sovereign immunity or about suits for damages caused by the Ecuadorian government. Non-Ecuadorians may have equal access to Ecuadorian courts and a guarantee of due process, but those issues do not speak to whether Ecuador would allow a United States citizen to sue the Ecuadorian government "in similar circumstances." *Id.* The documents are simply inapposite. Indeed, the affidavit from the Ecuadorian lawyer does not state that *any* party can

sue the Ecuadorian government. The documents demonstrate that a foreign citizen can bring suit to the same extent as an Ecuadorian citizen, but the documents do not address the key issue here: whether the Ecuadorian government would waive sovereign immunity in similar circumstances.

**[12]** The failure of Plaintiffs' documents to demonstrate reciprocity does not necessarily end the inquiry. Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." *See Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir. 2002) (discussing the determination of foreign law under Rule 44.1); *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1037-39 (9th Cir. 1999) (same). In *Universe Sales*, 182 F.3d at 1038, we elaborated that, "pursuant to Rule 44.1, courts may ascertain foreign law through numerous means," including through the court's "own research."

**[13]** Here, the district court held that, because Plaintiffs' documents did not establish reciprocity, Plaintiffs failed to meet their burden of demonstrating reciprocity. We are uncertain whether a plaintiff bears the burden of establishing the content of foreign law for purposes of the PVA's reciprocity requirement. *Compare* Fed. R. Civ. P. 44.1 (instructing that the district court's determination of foreign law is treated as a ruling on a question of law) *and Nicholas E. Vernicos Shipping Co. v. United States*, 349 F.2d 465, 467 (2d Cir. 1965) (conducting an extensive inquiry into the content of Greek law for purposes of determining reciprocity under 46 U.S.C. § 31111), *with Lauro v. United States*, 162 F.2d 32, 34-35 (2d Cir. 1947) (rejecting, before the promulgation of Rule 44.1, a claim under the PVA brought by an Italian plaintiff because "[s]he offered no proof of Italian law in the District Court"). But even assuming that Plaintiffs bear the burden here, the district court apparently did not recognize that, in its discre-

tion, it could inquire further into the content of Ecuadorian law. We therefore vacate and remand. *Cf. United States v. Davis*, 428 F.3d 802, 803 (9th Cir. 2005) ("Because the district court did not believe it had [certain] discretion, we vacate and remand for reconsideration . . . .").

Whether reciprocity exists under Ecuadorian law remains undetermined. Notably, the attorney for the United States asserted at oral argument that he did not know whether such reciprocity exists. In these circumstances, we find it appropriate to give the parties and the court an additional opportunity to determine this threshold question. On remand, the court may instruct the parties to provide additional evidence, through testimony or other means; the court may conduct its own research; and the court may undertake any other inquiry consistent with Rule 44.1 to determine whether reciprocity exists under Ecuadorian law.[4]

AFFIRMED in part, VACATED in part, and REMANDED. The parties shall bear their own costs on appeal.

---

[4]We make clear, however, that determining this question of foreign law will not necessarily require further discovery by Plaintiffs. Plaintiffs seek additional discovery concerning, for example, the actions of the crew. Such information is irrelevant as to the content of Ecuadorian law. The district court did not abuse its discretion in denying additional discovery. We do not, however, preclude such further discovery as the district court finds appropriate.