**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ABDULHALIM A. ALI and MOHAMED FAISAL ALI, *Plaintiffs-Appellants*, v. ROBERT ROGERS, AKA Bob Rogers and WILLIAM BARTLETT, *Defendants-Appellees*. | No. 13-15145 D.C. No. 3:12-cv-00340-NC OPINION |

Appeal from the United States District Court
for the Northern District of California
Nathanael M. Cousins, Magistrate Judge

Argued and Submitted
February 10, 2015—San Francisco, California

Filed March 19, 2015

Before: Mary M. Schroeder, Senior Circuit Judge, Barry G.
Silverman, Circuit Judge, and Marvin J. Garbis, Senior
District Judge.[*]

Opinion by Judge Silverman

---

[*] The Honorable Marvin J. Garbis, Senior District Judge for the U.S.
District Court for the District of Maryland, sitting by designation.

# SUMMARY[**]

### Admiralty Law

The panel affirmed the dismissal for lack of jurisdiction of a civil rights action brought by two Yemeni-born Muslim seamen.

The first seaman's claims concerned conduct aboard a tanker ship owned by the United States Maritime Administration, an agency of the federal government, but operated by a private company under a contract. The panel held that the conduct complained of had such a sufficient maritime connection that the seaman's complaint included at least one claim that could have been brought as a "civil action in admiralty" against the private wrongdoers, and therefore, pursuant to the Suits in Admiralty Act and the Public Vessels Act, should have been brought against the United States. The panel held that these statutes, which are analogous to the Federal Tort Claims Act, waive the government's sovereign immunity in admiralty actions involving U.S. government-owned vessels, and in doing so provide the exclusive remedy for such actions.

The second seaman alleged that he was not hired to work aboard the ship because of his religion and national origin, violating both his constitutional rights and his union's collective bargaining agreement with the company. The panel held that because the seaman could have brought suit in admiralty for breach of the collective bargaining agreement

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

related to the crewing of the U.S.-owned vessel, his exclusive remedy was against the United States.

## COUNSEL

Arnold I. Berschler (argued), Berschler Associates P.C., San Francisco, California, for Plaintiffs-Appellants.

Eric Kaufman-Cohen (argued), Trial Attorney, Civil Division/Torts Branch, United States Department of Justice, San Francisco, California, for Defendant-Appellee.

## OPINION

SILVERMAN, Circuit Judge:

Abdulhalim Ali was a seaman aboard a tanker ship owned by the United States Maritime Administration, an agency of the federal government, but operated by a private company under a contract. At all material times, the ship was in navigable water. Ali alleges that the human resources director of the company operating the ship ordered the ship's captain to fire him because he is of Yemeni origin. Ali brought a civil rights lawsuit naming as defendants the H.R. director and the captain of the ship, but not the United States. We hold today, as the district court did, that the conduct complained of had such a sufficient maritime connection that the plaintiff's complaint includes at least one claim that could have been brought as a "civil action in admiralty" against the private wrongdoers, and therefore, pursuant to the Suits in Admiralty Act and the Public Vessels Act, should have been brought against the United States. These statutes, which are

analogous to the Federal Torts Claim Act, waive the government's sovereign immunity in admiralty actions involving U.S. government-owned vessels, and in doing so provide the exclusive remedy for such actions. Because Abdulhalim Ali sued the H.R. director, rather than the United States, his complaint was properly dismissed for lack of jurisdiction. (The captain was never served.)

Mohamed Ali alleges that the day after Abdulhalim Ali was fired, he (Mohamed) was present in the hiring hall of the Seafarers International Union and saw a listing for a job aboard the same government-owned ship from which Abdulhalim Ali was fired. Mohamed Ali alleges that he was not hired on the orders of the H.R. director because of his religion and national origin, violating both his constitutional rights and his union's collective bargaining agreement with the company. He named only the H.R. director as a defendant. We also hold today that because Mohamed Ali could have brought suit in admiralty for breach of the collective bargaining agreement relating to the crewing of this U.S.-owned vessel, his exclusive remedy – including for his civil rights claims, which he could have alleged as being closely linked to the putative breach of contract claim – was against the United States. Therefore, his complaint, too, was properly dismissed for lack of jurisdiction.

## I.  Background

In reviewing an order dismissing a case for failure to state a claim, we "take as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011).

Plaintiffs Abdulhalim Ali and Mohamed Faisal Ali alleged the following: They are both Yemen-born Muslims who are now United States citizens. Both belong to the Seafarers International Union. In January 2010, Abdulhalim Ali was on the crew of the SS PETERSBURG, a vessel owned by the United States Maritime Administration, an agency of the United States Department of Transportation. Interocean American Shipping Corporation had contracted with the United States to provide civilian personnel to operate the PETERSBURG. Interocean also has a collective bargaining agreement with the union, under which Abdulhalim Ali was employed on the PETERSBURG.

Robert Rogers is a Vice President of Interocean and Director of its human resources department. On January 23, 2010, Rogers, "acting under color of law," ordered the captain of the PETERSBURG, William Bartlett, to terminate the employment of anyone on the ship "who appeared to be of Yemanese [sic] origin and/or of Arabic descent and/or a follower of Islam." In compliance with that order, Captain Bartlett fired Abdulhalim Ali and ordered him to leave the ship, which was in navigable waters, and Ali left. The following day, Mohamed Ali, who was in the union hiring hall in Oakland, California, saw a listing for a position on the PETERSBURG. His seniority in the union ranks meant that he had first choice of jobs, and he applied for the position. However, Rogers directed that Ali should not be hired, and that the job should instead be given "to another union member who was apparently not of Yemanese [sic] origin, Arabic descent and/or a follower of Islam."

Abdulhalim Ali and Mohamed Ali sued Rogers exactly two years after the date on which Abdulhalim Ali's employment was terminated, each bringing claims under

42 U.S.C. §§ 1981 and 1983. Abdulhalim Ali described his claims as being for "Wrongful Termination - Discrimination," while Mohamed Ali's claims were for "Discrimination in Contracting" and "Discrimination in Hiring." The district court dismissed the complaint for lack of subject matter jurisdiction. Noting that there was no dispute that the PETERSBURG is a "public vessel owned by the United States . . . [and] operated by Interocean" as the United States' agent, the district court concluded that the plaintiffs were required, by the terms of both the Clarification Act, 50 App. U.S.C. § 1291, and the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 30901 *et seq.*, to sue only the United States for admiralty claims. The district court concluded that both plaintiffs' claims satisfied the location and nexus tests for admiralty jurisdiction, so since the claims were filed against Rogers, rather than the United States, the district court dismissed the complaint with prejudice.

Abdulhalim Ali and Mohamed Ali now appeal. We have jurisdiction under 28 U.S.C. § 1291 to review the district court's final decision.

## II. Discussion

### A. Standard of Review

We review *de novo* a district court's order dismissing a case for lack of subject matter jurisdiction. *Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978, 982 (9th Cir. 2007).

### B. Statutory Framework

The SIAA waives sovereign immunity for the United States in cases where "a civil action in admiralty could be

maintained" against a private person in the same situation. 46 U.S.C. § 30903(a).[1] That is, if a vessel is owned by the United States, and someone is harmed by the vessel or one of its employees, and the harm is one for which, if the vessel were privately owned, the harmed individual could have sued its owner in admiralty, then the person can bring – indeed, must bring – that admiralty claim against the United States. *Id.*; *see Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 996 (9th Cir. 1997) (through the SIAA, government is subject to "the same liability . . . as is imposed by the admiralty law on the private shipowner"). This makes the SIAA "the maritime analog to the FTCA." *Huber v. United States*, 838 F.2d 398, 400 (9th Cir. 1988). In plain terms, the SIAA applies when (1) a vessel is owned by the United States or operated on its behalf, and (2) there is a remedy cognizable in admiralty for the injury. *See Williams v. Central Gulf Lines*, 874 F.2d 1058, 1061–62 (5th Cir. 1989) (framing SIAA inquiry in two parts: first, whether the vessel is owned by United States or an agent, and second, whether the claim stated is a "traditional admiralty claim"). The SIAA provides no cause of action; it just waives sovereign immunity where

---

[1] 46 U.S.C. § 30903(a) provides in full:

> (a) In general.—In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation. In a civil action in admiralty brought by the United States or a federally-owned corporation, an admiralty claim in personam may be filed or a setoff claimed against the United States or corporation.

an admiralty remedy is available. *Dearborn*, 113 F.3d at 996 n.1.

The SIAA has a two-year statute of limitations. 46 U.S.C. § 30905. Further, any remedy available under the SIAA is exclusive of any other remedy "arising out of the same subject matter" that the plaintiff might bring against the individual who actually caused the harm at issue. 46 U.S.C. § 30904.[2] That is, "where a remedy lies against the United States, a suit against an agent of the United States 'by reason of the same subject matter' is precluded." *Dearborn*, 113 F.3d at 997. As the Fifth Circuit has explained, "a remedy is provided" within the meaning of the SIAA when, "one, the underlying maritime law would permit the seaman to state the same claim against a private party, and two, the United States has waived its sovereign immunity with respect to that claim." *Martin v. Miller*, 65 F.3d 434, 442 (5th Cir. 1995). Moreover, the remedy available against the United States need not be the same as that available against a private party for this provision to apply. *See id.* at n.4. After an extensive review of the legislative history and case law surrounding the SIAA, the Fourth Circuit explained that the exclusivity provision's language was intended to enshrine a Supreme Court case holding that the SIAA "furnish[es] the exclusive remedy in admiralty against the United States . . . on all maritime causes of action arising out of the possession or operation" of vessels. *Manuel v. United States*, 50 F.3d 1253,

---

[2] 46 U.S.C. § 30904 provides in full:

> If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim.

1257 (4th Cir. 1995) (quoting *Johnson v. U.S. Shipping Bd. Emergency Fleet Corp.*, 280 U.S. 320, 327 (1930), *overruled in part on other grounds by Brady v. Roosevelt Steamship Co.*, 317 U.S. 575, 578 (1943)).   The Fourth Circuit acknowledged that this may lead to a "harsh result" in some cases, because of the resulting lack of certain remedies for seamen, but explained that the exclusivity language "clearly dictates this result."  *Id.* at 1260.

Also relevant to this case is another statutory waiver of federal sovereign immunity in the admiralty context, the Public Vessels Act ("PVA"). 46 U.S.C. §§ 31101 *et seq.*  The PVA applies to "civil action[s] in personam in admiralty . . . for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1).  Claims under the PVA have certain limitations that SIAA claims do not, but none that are relevant here.  More importantly, the PVA makes all claims subject to the SIAA, including its statute of limitations and its exclusivity provision, except to the extent to which the two are inconsistent.  46 U.S.C. § 31103; *see also Dearborn*, 113 F.3d at 996–97 (noting that the SIAA's exclusivity rule is incorporated by reference into the PVA).  Though some circuits interpret the term "damages" caused by a public vessel narrowly (i.e., as encompassing only physical injuries), we recently reaffirmed that the PVA includes claims arising out of the conduct of employees on a public vessel, not merely direct physical damages. *See Tobar v. United States*, 639 F.3d 1191, 1198 (9th Cir. 2011).  And despite expansive revisions to the SIAA, the Supreme Court continues to rule that any suit for damages caused by a public vessel falls under the PVA; under *Tobar* and predecessor cases, those damages will include contract damages.  *Id.*  Any other admiralty claim against a federally-owned vessel will fall

under the SIAA.  *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 181 (1976).[3]

## C. Admiralty Jurisdiction

The Constitution's grant of federal jurisdiction for admiralty, "codified at 28 U.S.C. § 1333(1), allows the filing of claims related to maritime contracts and maritime torts." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009).  Over time, courts have developed tests for both types of claim that determine whether a claim has sufficient "maritime flavor" that a litigant may properly invoke federal admiralty jurisdiction.  *See Owens-Illinois, Inc. v. U.S. Dist. Court for W. Dist. of Washington, at Tacoma*, 698 F.2d 967, 969–70 (9th Cir. 1983); David J. Bederman, *Admiralty Jurisdiction*, 31 J. Mar. L. & Com. 189, 206 (2000) (tracing development and contours of admiralty jurisdiction).

### 1.  Tort

Tort claims may sound in admiralty jurisdiction if they satisfy a test with three components showing that the claim has the requisite maritime flavor.  *Christensen v. Georgia-*

---

[3] Rogers argues that a third admiralty statute, the Clarification Act, applies to Abdulhalim's claims because he was employed on a vessel owned by the federal Maritime Administration. 50 App. U.S.C. § 1291(a). But this statute only covers claims for "death, injuries, illness, maintenance and cure, loss of effects, detention, or repatriation, or claims arising therefrom," as well as claims for "collection of wages and bonuses and making of allotments," requiring such claims to first go through an administrative exhaustion process and then, if they are administratively disallowed, be brought under the SIAA.  *Id*.  We cannot agree that Abdulhalim's claims are for the type of harms specifically covered by the Clarification Act.

*Pac. Corp.*, 279 F.3d 807, 814 (9th Cir. 2002). The relevant tort or harm must have (1) taken place on navigable water (or a vessel on navigable water having caused an injury on land), (2) "a potentially disruptive impact on maritime commerce," and (3) a "substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). We look at a tort claim's general features, rather than at its minute particulars, to assess whether there is the requisite connection; thus, for instance, when a crane on a river barge flooded a tunnel, the Supreme Court spoke of "damage by a vessel in navigable water to an underwater structure," and when two girls were thrown off a Sea-Doo into San Diego's Mission Bay, the Ninth Circuit described the incident as "harm by a vessel in navigable waters to a passenger." *Id.* at 539; *Mission Bay Jet Sports*, 570 F.3d at 1129.

## 2. Contract

As with torts, in determining whether there is admiralty jurisdiction over a given contract, the court's task is to determine whether it is adequately maritime in nature. Federal courts have admiralty jurisdiction over a contract "if its subject matter is maritime." *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir. 2001) (quoting *Royal Ins. Co. of America v. Pier 39 Ltd.*, 738 F.2d 1035, 1036 (9th Cir. 1984)). The answer to the question of whether a given contract is a "maritime" contract " 'depends upon . . . the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)). Of particular relevance to this case, it is well settled that "a contract for

hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).

### D.  Plaintiffs' Claims Are Subject to the Public Vessels Act and Suits in Admiralty Act

Having outlined the general landscape (or should we say seascape?) of admiralty jurisdiction and waivers of sovereign immunity, we consider whether plaintiffs' claims are sufficiently maritime in nature that they should have been brought under the PVA and SIAA rather than against Rogers.

As noted, it is undisputed that the PETERSBURG is a "public vessel of the United States." Therefore, assuming some form of damages is involved, both Abdulhalim Ali and Mohamed Ali's claims are subject to the PVA, and through it the SIAA, if they have claims that can be properly characterized as "civil action[s] in personam in admiralty." 46 U.S.C. § 31102.

We hold that Abdulhalim Ali's allegations against Rogers establish that his claims have the requisite maritime flavor to constitute a "civil action in personam in admiralty" and be subject to the PVA and SIAA. 46 U.S.C. §§ 31102–31103. Ali alleged that the PETERSBURG's captain fired him from the ship's crew, in violation of the collective bargaining agreement, while he was aboard the ship, and while the ship was docked in navigable waters. The district court treated Ali's claims as tort claims, noting that Ali's termination from the ship's crew could potentially have disrupted the ship's activities because it was then missing a crew member; furthermore, the activity in which he was engaged, crewing a ship, is one of the most basic "traditional maritime

activities" that exists. We need express no opinion as to whether Ali's discrimination claims could be considered admiralty torts. His claims under §§ 1981 and 1983 also include allegations raising a breach of contract claim. Such a claim would be indisputably maritime in nature, since Ali's contract was for employment to operate the PETERSBURG on navigable waters. *See Kossick*, 365 U.S. at 735.

Given that the PETERSBURG is a public vessel, and Ali's claims are based on conduct resulting from its operation, the PVA's waiver of sovereign immunity is applicable, and Ali is thus able to sue the United States. But PVA claims are also generally subject to the SIAA, and the SIAA's exclusivity provision precludes any claims arising from the same facts from being brought against any parties but the United States. *See* 46 U.S.C. § 30904. Consequently, Ali not only *could* sue the United States, if he wanted any relief, he was *required* to do so. *See id.*; *see also Manuel*, 50 F.3d at 1259–60. Since Ali's discrimination claim against Rogers is "a suit against an agent of the United States 'by reason of the same subject matter' [it] is precluded." *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997 (9th Cir. 1997) (quoting 46 U.S.C. § 30904).

Mohamed Ali also pleaded his claims under §§ 1981 and 1983. However, he was neither aboard the PETERSBURG nor yet hired to work on its crew when Rogers directed that he not be hired, for allegedly discriminatory reasons. Therefore, the harm did not take place on navigable waters as required for admiralty tort jurisdiction. However, Ali alleged that he was entitled to the benefit of his union's collective bargaining agreement and that Rogers breached this contract by a discriminatory refusal to hire him as a crew member of the PETERSBURG. Such an agreement plainly will have

"reference to maritime service or maritime transactions," thereby satisfying the "true criterion" for what makes a maritime contract, and qualifying for admiralty contract jurisdiction. *Norfolk S. Ry. Co.*, 543 U.S. at 24 (citation omitted). Although Ali's portion of the complaint pleaded claims under §§ 1981 and 1983, he *could* have brought a breach of contract claim in admiralty jurisdiction. Such an action would be "a civil action in admiralty [that] could be maintained," so *both* that claim *and* his discrimination claims, which "aris[e] out of the same subject matter" and are closely linked to the contract claim, are subject to the SIAA's exclusivity provision.    46 U.S.C. §§ 30903, 30904.[4] Therefore, Ali was required to bring his claims against the United States, not against Rogers. Since he did not, the district court rightly concluded that it lacked subject matter jurisdiction over the claims. In holding that these plaintiffs' claims are barred by the SIAA, we express no view on the merits of these claims in admiralty. Our inquiry is a jurisdictional one only.

## III.    Conclusion

Neither party has argued that plaintiffs' discrimination claims could be brought as admiralty claims; therefore, we reiterate that we express no opinion on that issue. Rather, we conclude that because Abdulhalim Ali and Mohamed Ali's claims both involved a contract for employment or potential employment aboard a public vessel of the United States and have sufficient maritime connection, they were required to

---

[4] Like Abdulhalim's claim, Mohamed's claims are subject to the SIAA by way of the PVA, since contract damages caused by a public vessel are subject to the PVA. *Tobar v. United States*, 639 F.3d 1191, 1198 (9th Cir. 2011).

bring those claims against the United States. Since they sued Rogers instead, the district court correctly determined that it lacked subject matter jurisdiction over their claims.[5]

**AFFIRMED.**

---

[5] We do not remand with instructions that the district court give leave for plaintiffs to amend their complaint, because the SIAA's two-year statute of limitations has run, 46 U.S.C. § 30905, and the plaintiffs make no argument that any sort of tolling or relation back applies.