**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OSWALDO ENRIQUE TOBAR; ROSA
CARMELINA ZAMBR LUCAS; JUNIOR
IVAN PICO ALAVA; SEGUNDO
MATIAS ZAMBRANO ALONZO;
FRANCISCO GABRIEL YOLE
ARTEAGO; FAUSTO LUPERCIO ARIAS
CASTANEDA; FRABRICIO BAYRON
CEDENO; JOFFRE JOHNNY CEDENO
CEDENO; LINDON CLEOFE CEDENO
CEDENO; RAMON ELIADES RAMON V
CEDENO; DANIEL DAVID QUIMI
CHALEN; PABLO EDUARDO LUCAS
CONFORME; RAMON EDUARDO
PILLIGU CONFORME; CIRO MARIANO
LOPEZ MERO; PEDRO MANUEL
LOPEZ MERO; JOSE EDUARDO LUCAS
MERO; LUIS ANTONIO PENAFIE
MERO; PEDRO JOSE REYES MERO;
TELMO ARCADIO CHICA OBANDO;
LUIS MIGUEL CEDENO PICO; JAIME
GUSTAVO PALMA PINARGOTE;
YARDY KLEVER FLORES SEGOVIA;
PACHO HERNANDEZ SOLORZANO;
CARLOS WILFRIDO VELIZ VELEZ;
JOSE LUIS ZAMBRANO ZAMBRANO;
CARLOS ORLANDO VELEZ
ZAMBRANO,
            *Plaintiffs-Appellants*,

No. 12-56298

D.C. No.
3:07-CV-00817-
WQH-WMC

OPINION

v.

UNITED STATES OF AMERICA,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
August 23, 2013—Pasadena, California

Filed September 25, 2013

Before:  Harry Pregerson, Susan P. Graber, and
Morgan Christen, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Sovereign Immunity

The panel affirmed in part and vacated in part the district court's dismissal based on the federal government's sovereign immunity, or alternatively under the discretionary function exception to the waiver of sovereign immunity, of an

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

action brought by the crew of an Ecuadorian fishing boat that was searched and towed by the United States Coast Guard.

The panel held that on the evidence submitted in this case, reciprocity with Ecuador exists because, in similar circumstances, nationals of the United States are able to sue Ecuador in Ecuadorian courts. The panel concluded that the government's waiver of sovereign immunity was not barred by the reciprocity requirement. The panel also held that the discretionary function exception to the waiver of sovereign immunity, contained in the Federal Tort Claims Act, also applied to the Public Vessels Act. The panel further held that the government's waiver of sovereign immunity was not barred by the discretionary function exception to the extent that plaintiffs' claims resulted from the failure of the government to meet its non-discretionary duty to pay damages, contained in Ecuador's authorization to board plaintiffs' vessel and incorporated by reference in the Coast Guard Maritime Law Enforcement Manual. Finally, the panel held that to the extent that plaintiffs' claims fell outside the non-discretionary duty to pay damages, their claims were barred by the discretionary function exception.

## COUNSEL

Walter L. Boyaki (argued), Boyaki Law Firm, El Paso, Texas, for Plaintiffs-Appellants.

R. Scott Blaze (argued), Senior Admiralty Counsel, Stuart Delery, Acting Assistant Attorney General, and R. Michael Underhill, Attorney in Charge, Torts Branch, Civil Division, United States Department of Justice, San Francisco, California, for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

Patrolling in international waters, the United States Coast Guard suspected the crew of an Ecuadorian fishing boat of illicit activities.  With the authorization of Ecuadorian authorities, the Coast Guard boarded the boat, searched for drugs, and towed the boat to Ecuador.  The Ecuadorian crew, who are Plaintiffs here, allege that agents of Defendant United States harmed Plaintiffs and their property in violation of the Federal Tort Claims Act ("FTCA"), the Suits in Admiralty Act ("SAA"), and the Public Vessels Act ("PVA").  The district court held that the government had not waived its sovereign immunity, and it dismissed the case.  In an earlier appeal, we affirmed in part, vacated in part, and remanded for further proceedings. *Tobar v. United States*, 639 F.3d 1191 (9th Cir. 2011).  In particular, we remanded for the district court to accept further evidence and briefing on the issue whether reciprocity with Ecuador exists—a statutory condition under 46 U.S.C. § 31111 to the government's waiver of sovereign immunity.  *Id.* at 1200.

On remand, the parties submitted, among other documents, affidavits by experts in Ecuadorian law. Unpersuaded that reciprocity exists, the district court again held that the government had not waived its sovereign immunity.  The district court also held, in the alternative, that Plaintiffs' claims fell within the "discretionary function exception" to the government's waiver of sovereign immunity.  Plaintiffs timely appeal the judgment dismissing the action.

We review de novo whether the government has waived its sovereign immunity. *Harger v. Dep't of Labor*, 569 F.3d 898, 903 (9th Cir. 2009). We disagree with the district court's analysis of the experts' affidavits. We hold that, on the evidence submitted by the parties, reciprocity with Ecuador exists. We agree with the district court that the "discretionary function exception" applies generally to Plaintiffs' claims, because most of the actions by the Coast Guard were discretionary. But we hold that, under the facts here, the government may have violated its non-discretionary policy of paying damages to the owner of the boat. To the extent that Plaintiffs can establish that the United States violated that mandatory obligation, sovereign immunity does not bar this action. Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

## DISCUSSION

We must determine whether reciprocity with Ecuador exists and, if so, whether the discretionary function exception bars Plaintiffs' claims. We address those issues in turn.[1]

---

[1] Plaintiffs also argue that the district court abused its discretion by denying further discovery. Because Plaintiffs have not identified relevant information that discovery could have uncovered, we hold that the district court did not abuse its discretion. *See Quinn v. Anvil Corp.*, 620 F.3d 1005, 1015 (9th Cir. 2010) ("We review district court rulings on discovery matters for abuse of discretion.").

A. *Reciprocity with Ecuador*

The PVA's waiver of sovereign immunity is conditioned on the following reciprocity requirement:

> A national of a foreign country may not maintain a civil action under this chapter unless it appears to the satisfaction of the court in which the action is brought that the government of that country, in similar circumstances, allows nationals of the United States to sue in its courts.

46 U.S.C. § 31111.  As we held in the first appeal, where, as here, the suit falls within the scope of the PVA, claims brought under the FTCA and SAA also must meet that reciprocity requirement.  *Tobar*, 639 F.3d at 1197 (citing *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164 (1976), and *Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005)).

The relevant question is whether Ecuador, "in similar circumstances, allows nationals of the United States to sue in its courts." 46 U.S.C. § 31111.  The determination of foreign law is a legal question.  *Tobar*, 639 F.3d at 1200.

Plaintiffs originally submitted evidence only that Ecuador has an "open court" system and that foreigners have equal access to the courts.  We held that those statements were insufficient because they failed to address whether Ecuador would assert sovereign immunity:  "The documents demonstrate that a foreign citizen can bring suit to the same extent as an Ecuadorian citizen, but the documents do not address the key issue here:  whether the Ecuadorian

government would waive sovereign immunity in similar circumstances." *Id.* at 1199.

On remand, Plaintiffs submitted affidavits by three experts in Ecuadorian law, and the government submitted an affidavit by one such expert. Neither party challenges the experts' credentials.

Plaintiffs' experts made two new points. First, according to Plaintiffs' experts, the concept of "sovereign immunity" as understood in common-law nations does not exist in Ecuadorian law, because Ecuador is a civil-law nation. Second, Plaintiffs' experts stated that, accordingly, there would be no legal impediment to a United States citizen's suing the Ecuadorian government in similar circumstances; reciprocity exists.

Those affidavits establish that, in similar circumstances, a United States citizen would be able to sue Ecuador in Ecuadorian courts. Accordingly, reciprocity exists. 46 U.S.C. § 31111.

The government's arguments to the contrary are unpersuasive. On the first point, concerning the existence of sovereign immunity in Ecuadorian law, the government asserts that sovereign immunity does indeed exist in Ecuadorian law, and it faults Plaintiffs' experts for providing "unsupported" conclusions to the contrary. But the affidavits themselves *are* support—they are sworn statements by legal experts on Ecuadorian law. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). Moreover, the government's expert offered only

one statement concerning sovereign immunity in Ecuadorian law: "Regardless of what one argues about the role, if any[,] [s]overeign immunity plays in Ecuadorian law, I can say that there is nothing in the Constitution of Ecuador (1998 Constitution would be applicable given the date of the casualty in 2005) which would absolutely guarantee reciprocity as to the hypothetical action." (Emphases omitted.) In other words, the government's expert declined to contest the proposition that sovereign immunity does not exist in Ecuador. Read narrowly, the expert demurs; read broadly, he implicitly concedes that Plaintiffs' experts are correct that sovereign immunity does not exist in Ecuadorian law. If, as the government asserts, sovereign immunity exists in Ecuadorian law, we would expect its expert simply to say so.[2]

---

[2] Plaintiffs' experts correctly identify sovereign immunity as a creature of common law, rather than civil law. *See, e.g.*, 33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8403, at 418 (3d ed. 2006) (tracing the roots of the doctrine to Blackstone: "Blackstone took to be a fundamental principle that 'the King can do no wrong.'"); *id.* at 419 ("This body of law crossed the Atlantic and a similar principle evolved in U.S. law."); *accord* Erwin Chemerinsky, *Federal Jurisdiction* § 9.2.1, at 629 (5th ed. 2007) ("The principle of sovereign immunity is derived from English law, which assumed that 'the King can do no wrong.'"). Although we have found no source describing the difference between common-law nations and civil-law nations with respect to sovereign immunity in a nation's own courts, we note that, traditionally, civil-law nations took a more lenient view of access to the courts in the realm of *foreign* sovereign immunity. *See* Letter from Jack B. Tate, Acting Legal Advisor, Department of State, to Acting Attorney General Philip B. Perlman, May 19, 1952, *reprinted in Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 711–15 (1976); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 878 (4th Cir. 1981) (describing the doctrine).

Nor does the government identify any other Ecuadorian legal source in support of its position. The government cites cases in which Ecuador has waived *foreign* sovereign immunity as a defendant in a case in United States court. *Jota v. Texaco Inc.*, 157 F.3d 153, 162–63 (2d Cir. 1998); *Aquamar S.A. v. Del Monte Fresh Produce N.A.*, 179 F.3d 1279, 1300 (11th Cir. 1999). But *foreign* sovereign immunity concerns the right of a foreign nation (or agency) to sovereign immunity *in courts of the United States*. The doctrine of sovereign immunity at issue here is different. We must determine the extent to which a nation can use its sovereign immunity as a defense *in its own courts*. Nothing in the United States cases cited by the government concerns the question whether Ecuador applies the concept of sovereign immunity *in its own court system*. That Ecuador may choose to waive or retain sovereign immunity when it finds itself as a defendant in United States courts simply does not speak to whether that defense is available in courts of its own jurisdiction.

Turning to the second point—that reciprocity exists because there would be no legal impediment to filing suit if the nationalities were reversed—the government's response rests on a misunderstanding of the relevant inquiry. The government's expert repeatedly demurs, or implicitly concedes, the legal point; instead, he focuses only on whether, *as a practical matter*, litigation in Ecuadorian courts would succeed:

> It is my opinion that a hypothetical action as described above in paragraph 2, could hardly (or never) be successful, and could hardly (or never) result in a money judgment against the Ecuadorian military or Ecuadorian

government entities. In other words, *as a practical matter*, there is no reciprocity.

. . . .

Whether reciprocity may exist to whatever degree as a legal matter based on Constitutional and legal rules, *as a practical matter*, I believe it will be very hard, not to say impossible, to get a judicial decision against the government of Ecuador or the Navy. One must assume that if intended suits against the government and its military are actually permitted, it would be *practically*, not to say unthinkably, unlikely to get a favorable decision to hypothetical plaintiffs, especially now when the executive branch is reorganizing the entire judiciary system. In other words, no reciprocity exists *as a practical matter*.

. . . .

Even if reciprocity could be said to exist in Ecuador as a matter of Constitutional and legal rules, *as a practical matter*, its existence would be unimaginably difficult to achieve.

(Paragraph numbering omitted; emphases altered.) The expert never explains what those practical considerations are.[3]

---

[3] For example: Are the filing deadlines strict? Is discovery against Ecuador limited? Are suits against the government disfavored? Are the filing fees expensive? Would the government seek to resolve the dispute

In any event, the unspecified practical limitations on the potential *success* of a suit do not speak to the relevant legal inquiry here: whether a citizen of the United States would be *allowed to sue*. *See* 46 U.S.C. § 31111 (querying whether the foreign government, "in similar circumstances, allows nationals of the United States to sue in its courts").**[4]**

The government's final arguments fare no better. The government argues that it is not clear from the affidavits by Plaintiffs' experts whether they considered the precise context—in particular, the fact that the challenged actions were taken by the United States *military*. Although the experts did not specifically mention the military, they were aware of the facts of this case and assessed reciprocity in that light. For example, one expert reached his conclusions only after stating: "I have reviewed the facts and information on file with the case of Tobar, et al v. The United States." Moreover, the experts' conclusions did not depend on the precise nature of the underlying facts, because their reasoning was that sovereign immunity simply does not exist in Ecuadorian law.

The government also argues, as stated by its expert, that there is no "absolute guarantee" of reciprocity in the Ecuadorian constitution. But that is not the proper inquiry. There need not be a constitutional guarantee to meet the

---

through political channels? Is there a presumption in favor of the government?

**[4]** We need not and do not decide whether a country with a demonstrably corrupt court system, where legal permission to sue is but an empty gesture, would qualify under the statute. There is neither evidence nor argument in this case that such would be the "practical" reason for the projected lack of success in the hypothetical Ecuadorian litigation.

statute's reciprocity requirement. Section 31111 asks only whether the foreign government, "in similar circumstances, allows nationals of the United States to sue in its courts." On the evidence submitted by the parties, we hold that reciprocity exists under 46 U.S.C. § 31111.

B.  *Discretionary Function Exception*

1.  *Applicability to the PVA*

The FTCA waives sovereign immunity for certain categories of claims, subject to specified exceptions, including the "discretionary function exception":

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

Neither the SAA nor the PVA expressly contains the "discretionary function exception." Nevertheless, in *Earles*

*v. United States*, 935 F.2d 1028, 1032 (9th Cir. 1991), we joined eight sister circuits in holding that the exception applies to claims brought under the SAA. "Were we to find the discretionary function exception not to be applicable to the SAA, we would subject all administrative and legislative decisions concerning the public interest in maritime matters to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries." *Id.* (internal quotation marks and alterations omitted). The same reasoning applies to claims under the PVA: If Congress' intent to exempt discretionary functions from independent judicial review is given effect, the discretionary function exception must apply to the PVA as well. *Cf. Koohi v. United States*, 976 F.2d 1328, 1336 (9th Cir. 1992) (incorporating the FTCA's "combatant activities" exception into the PVA because, "if Congress's manifest intent to maintain sovereign immunity from liability arising from the combatant activities of maritime vessels is to be given meaningful effect, the combatant activities exception must be incorporated into the PVA").

Not surprisingly, then, all three sister circuits to have considered the issue have held that the discretionary function exception applies to claims under the PVA. *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003); *B & F Trawlers, Inc. v. United States*, 841 F.2d 626, 630 (5th Cir. 1988); *U.S. Fire Ins. Co. v. United States*, 806 F.2d 1529, 1534–35 (11th Cir. 1986), *abrogated in part by United States v. Gaubert*, 499 U.S. 315 (1991), *as recognized in Cranford v. United States*, 466 F.3d 955, 959 (11th Cir. 2006); *see also McMellon v. United States*, 387 F.3d 329, 334–49 (4th Cir. 2004) (en banc) (conducting an extensive analysis of the FTCA, SAA, and PVA to conclude, in reasoning that applies equally to the PVA, that

the SAA incorporates the discretionary function exception). We join our sister circuits in holding that the discretionary function exception also applies to the PVA's waiver of sovereign immunity.

> 2. *Application of the Discretionary Function Exception*

The Supreme Court decided a series of cases concerning the scope of the discretionary function exception, culminating in its 1991 decision in *Gaubert*, 499 U.S. 315. *See also Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531 (1988); *Varig Airlines*, 467 U.S. 797; *Indian Towing Co. v. United States*, 350 U.S. 61 (1955); *Dalehite v. United States*, 346 U.S. 15 (1953). After *Gaubert*, the courts have followed a two-step analysis when considering whether the discretionary function exception applies. *See Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citing *Berkovitz*, 486 U.S. at 536–37). The first step asks "whether the challenged actions involve an 'element of judgment or choice.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). The exception will not apply if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Otherwise, the analysis proceeds to the second step.

The second step asks "'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'" *Terbush*, 516 F.3d at 1129 (quoting *Berkovitz*, 486 U.S. at 536–37); *see also Varig Airlines*, 467 U.S. at 814 (describing the inquiry as whether the decision is "grounded in social, economic, and political policy"). This inquiry requires a determination of

where the activity falls on the spectrum from non-policy activities (such as driving a car) to policy-related ones (such as drafting regulations). *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).

### a. *First Step: "Element of Judgment or Choice"*

"[T]he discretionary element is not met where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Myers ex rel. L.M. v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011) (internal quotation marks omitted). "An agency does not retain discretion whether to act where a statute or policy directs *mandatory and specific action* and the agency has no lawful option but to adhere to the directive." *Bailey ex rel. Estate of Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010) (emphasis added). The statute authorizing the actions taken here speaks in pertinent part only in general terms and does not direct mandatory and specific action:

> The Coast Guard *may* make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers *may at any time* go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine

> the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

14 U.S.C. § 89(a) (emphases added).

Indeed, Plaintiffs do not assert that § 89(a) prescribes a specific course of action. Instead, they assert that the government violated its own *regulations and policies*. In particular,[5] the U.S. Coast Guard Maritime Law Enforcement Manual provides: "When acting pursuant to flag State authorization, the boarding State may not exceed the terms of the authorization. Such authorization may be contained in a pre-existing written agreement or may be provided on an ad hoc basis." That policy does not afford any discretion: "the boarding State *may not exceed* the terms of the authorization." (Emphasis added.) Here, the specific authorization to board and inspect Plaintiffs' boat[6] contained the following condition: "If there are no drugs on board, and there are damages or losses sustained by the vessel, in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated, as long as neither the vessel nor the crew have been involved in illicit actions." That directive, too, is specific and mandatory: The owner "*will be* compensated," so long as the specified conditions are met. (Emphasis

---

[5] We have considered Plaintiffs' arguments carefully, but we have uncovered no other regulation or policy that directs a mandatory and specific course of action that is relevant here.

[6] The United States' request for Ecuador's authorization to search this specific Ecuadorian boat is contained in a letter that lists the condition quoted in the text above. The record contains no suggestion that Ecuador's grant of authorization differed from the request.

added.)    By carrying out its activities with respect to Plaintiffs' boat, the government accepted that mandatory obligation.

Accordingly, to the extent that Plaintiffs demonstrate that all of the specified conditions have been met, their claims are not barred by the discretionary function exception.  In their complaint, Plaintiffs allege that there were no drugs on board, that there were damages and losses sustained by the vessel, that some Plaintiffs owned the boat, and that neither the vessel nor the crew had been involved in illicit actions. Because the district court dismissed this action on the pleadings, we take as true the allegations in the complaint. *Cell Therapeutics Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1206 n.2 (9th Cir. 2010).  In this procedural posture, then, those elements have been satisfied.[7]

It is less clear that Plaintiffs have exhausted their administrative remedies, as required by the policy:  "in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated."  The complaint alleges that Plaintiffs "filed a claim for injuries with the United States Navy and Coast Guard" and that the government took no action on that claim within six months, "tantamount to denial of the claim."  At oral argument, the government's lawyer suggested that the administrative denial of Plaintiffs' claim resulted from Plaintiffs' failure to provide documentation of damages.  In

---

[7] Because we conclude that the manual, in conjunction with the letter, prescribed a non-discretionary course of action, we need not consider whether the government voluntarily assumed a non-discretionary contractual duty. *See Bell v. United States*, 127 F.3d 1226, 1229 (10th Cir. 1997).

order to prove that the government violated its non-discretionary duty to pay damages to the owner, Plaintiffs must demonstrate that it met the administrative requirements imposed by federal law. But these issues cannot be decided on the pleadings.

Two additional, related restrictions warrant mention. First, the non-discretionary duty requires the government to pay damages to "*the owner*" of the boat. (Emphasis added.) Because the government's non-discretionary duty applies only to the owner of the boat, the only Plaintiffs who can benefit from the policy are the owners. Second, the non-discretionary duty pertains to "damages or losses sustained by the vessel." Plaintiffs have alleged a wide range of injuries, including physical damages to the boat itself and reputational damages to crew members resulting from "public ridicule." Because the parties have not briefed the issue, we express no view on the extent of "damages or losses" encompassed by the non-discretionary duty to pay.

> b.  *Second Step: "Based on Considerations of Public Policy"*

Plaintiffs also argue that, even if the government did not violate a non-discretionary duty, the discretionary function exception nevertheless is inapplicable, because any discretionary judgments were not "based on considerations of public policy." This step considers the discretionary judgment at issue and asks "whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Terbush*, 516 F.3d at 1129 (internal quotation marks omitted). As discussed above, 14 U.S.C. § 89(a) confers discretion on the Coast

Guard crew in carrying out the boarding and inspection of vessels on the high seas. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a *strong presumption* that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324 (emphasis added); *see also id.* ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.").

Two sister circuits have held, in actions similar to this one, that the second step was met. In *B & F Trawlers*, 841 F.2d at 627, the Coast Guard discovered a ship carrying marijuana and began towing the ship. During the towing, a fire broke out on the ship, and the Coast Guard eventually sank the ship. *Id.* The Fifth Circuit held that the Coast Guard's actions concerned public policy. *Id.* at 631. The court reasoned that "the discretionary activity is the enforcement of narcotics laws on the high seas" and that "the discretionary function exception in principle shields from tort liability the Coast Guard's apprehension and transportation of drug-running vessels." *Id.* at 631–32.

Similarly, in *Mid-South Holding Co. v. United States*, 225 F.3d 1201, 1203 (11th Cir. 2000), the Customs Service searched a ship that later sank, allegedly because of the Custom Service's negligent actions while conducting the search. The Eleventh Circuit held that the second step was met because "the decision to board and search a vessel is the product of the balancing of various compelling policy considerations." *Id.* at 1205. After block-quoting the

reasoning of the Fifth Circuit in *B & F Trawlers*, the court held:

> The considerations cited by the Fifth Circuit apply with equal force here. The Customs Service, faced with escalating enforcement duties and limited resources, must decide how best to effectuate our nation's anti-narcotics laws. In so doing, the Customs Service necessarily exercises discretion in choosing whether to board and search a vessel, weighing the costs of implementing such activities against the likelihood of an enforcement success. The discretionary function exception was designed to prevent judicial "second guessing" of exactly this type of policy-based decision.

*Id.* at 1206 (citations omitted).

In our view, the reasoning of the Fifth and Eleventh Circuits applies equally here.[8] The challenged actions—the

---

[8] Plaintiffs' attempts to distinguish those cases fall flat. Plaintiffs point out that the Fifth Circuit in *B & F Trawlers* remanded the case to determine whether the Coast Guard had violated any regulations. But a violation of a regulation concerns the first step, discussed above, not the second step. Turning to *Mid-South Holding*, Plaintiffs insist that the Eleventh Circuit's discussion concerned a different exception, the "Customs exception," and not the discretionary function exception. Plaintiffs are mistaken. The district court had analyzed the law enforcement exception without mention of a "customs exception," but the Eleventh Circuit expressly declined to reach that issue because it resolved the case on the ground of the discretionary function exception. *Mid-South Holding*, 225 F.3d at 1207–08. The entire discussion concerns the discretionary function exception. *Id.* at 1205–07. In sum, Plaintiffs offer

boarding, searching, and towing of the ship—all fall under policy considerations of enforcement of domestic drug laws, "minimization of intrusion on the privacy and property interests of searched parties," general considerations of foreign relations, as well as "weighing the costs of [boarding and searching the ship] against the likelihood of an enforcement success." *Id.* at 1206–07. "Although the attendant details could be characterized as mundane or as disengaged from any substantial policy consideration, they are nonetheless critical to the performance of the discretionary scheme and, accordingly, are entitled to the protection of the discretionary function exception." *Id.* at 1207.

We therefore hold that, to the extent that Plaintiffs' claims fall outside the non-discretionary duty to pay damages, their claims are barred by the discretionary function exception.

## CONCLUSION

On the evidence submitted in this case, reciprocity with Ecuador exists because, in similar circumstances, nationals of the United States are able to sue Ecuador in Ecuadorian courts. Accordingly, the government's waiver of sovereign immunity is not barred by the reciprocity requirement. The government's waiver of sovereign immunity also is not barred by the discretionary function exception to the extent that Plaintiffs' claims result from the failure of the government to meet its non-discretionary duty to pay damages, contained in Ecuador's authorization to board Plaintiffs' vessel and incorporated by reference in the Coast

---

no factual or legal distinction between this case and *B & F Trawlers* and *Mid-South Holding*, and we cannot discern a meaningful distinction.

Guard Maritime Law Enforcement Manual.  Otherwise, the discretionary function exception bars Plaintiffs' claims.

**AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.**  The parties shall bear their own costs on appeal.