BERZON, Circuit Judge,
dissenting:
Gina Gonzalez, the plaintiff in this action, alleges that a Federal Bureau of Investigation (FBI) agent knew of serious threats to her family.[1] The information about the threats was lost within the agency and so was not disclosed to local law enforcement, as the FBI’s policy requires. Because no action was taken to follow up on the threat, Gonzalez’s husband and nine-year-old daughter were killed and she was injured.
The majority holds that, under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., the federal government cannot be held to answer in tort for this entirely avoidable tragedy. That cannot be.
I
Gonzalez’s central allegation is that despite a mandatory FBI policy so requiring — “[w]hen credible information is received by an FBI field office concerning serious criminal activity not within the FBI’s investigative jurisdiction, the field office shall promptly transmit the information or refer the complainant to a law enforcement agency having jurisdiction,” Attorney General’s Guidelines for Domestic FBI Operations § VI(C)(2) (“Guidelines”) — there was no disclosure to local authorities. The information was forwarded within the FBI but then, according to Gonzalez, simply lost.
There are exceptions to the FBI’s disclosure or referral requirement — “where disclosure would jeopardize an ongoing investigation, endanger the safety of an individual, disclose the identity of a human source, interfere with a human source’s cooperation, or reveal legally privileged information.” Id. But the complaint does not indicate that any FBI investigation was implicated by the non-disclosed information or that any other exception to the mandatory disclosure policy applied.
The Government has not asserted otherwise. Instead, the Government’s position is essentially hypothetical — if one of the *1038 exceptions were applicable, then the nondisclosure decision would be discretionary, and there is no FTCA jurisdiction over discretionary acts. 28 U.S.C. § 2680(a).
But the loss of information subject to a mandatory disclosure policy is not an “exercise of policy judgment,” United States v. Gaubert, 499 U.S. 315, 326, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 538 n. 3, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). Nor does the existence of hypothetically applicable exceptions to a mandatory requirement convert an otherwise mandatory policy into a discretionary one. I respectfully — but emphatically — dissent.
II
Gonzalez’s story, recounted in detail in the majority opinion, is a distressing one by any standard. In summary: One early morning in 2009, three members of an extremist “Minutemen” group entered Gonzalez’s house wearing masks and carrying guns. They murdered her husband in front of her. After one of the invaders asked Gonzalez’s nine-year-old daughter, B.F., whether her sister was home, he shot B.F. in the face and killed her. The intruders shot Gonzalez as well, several times, and likely would have killed her had she not defended herself with her husband’s handgun while calling for help.
Tragically, these events were preventable. An FBI informer was involved in planning the attack. He provided an FBI agent, Chris Andersen, with information about the plan to “hit[ ] the house like a SWAT team.” The informant gave Andersen a map, drawn by the leader of the planned attack, showing the approximate location of the house, and reported that he believed the plotters posed a real and imminent threat.
So what happened? Andersen provided the map to the FBI’s Phoenix office, but the office misplaced the map. Neither Andersen nor anyone else notified the Pima County Sheriffs Department, the local law enforcement agency in charge of the town in which Gonzalez’s home was located. Had the Sheriffs department been notified, it could have arrested the organizer of the attack, as she was known to the Sheriffs Department and could have been charged with conspiring to carry out the attack before it occurred.
In short, Andersen’s well-substantiated information of an impending attack never made it to Pima County officials. Gonzalez’s husband and daughter died preventable deaths. The majority holds that the United States cannot be held liable for those deaths, because the FBI had the discretion to withhold information from local law enforcement that could have saved two lives.
III
“The applicability of the discretionary function exception is determined by a two-part test.” Miller v. United States, 163 F.3d 591, 593 (9th Cir.1998). First, we must determine whether the “challenged conduct ... is a matter of choice for the acting employee,” as “the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.” Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. If that test is satisfied, we must also determine whether “the discretion involves the type of judgment that the exception is designed to shield,” Miller, 163 F.3d at 593, namely “legislative and administrative decisions grounded in social, economic, and political policy,” Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267 (1991) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). The conduct challenged here — the FBI’s *1039 failure to disclose information to local law enforcement agencies — does not meet either prong of the test and is therefore not shielded by the discretionary function exception.
A
In the first place, and most important, the FBI does have a mandatory disclosure policy, and it was applicable to the information agent Andersen acquired. That policy commands FBI personnel in no uncertain terms as to what to do with “credible information ... concerning serious criminal activity,” using mandatory language: “[T]he field office shall promptly transmit the information or refer the complainant to a law enforcement agency having jurisdiction.” Guidelines § YI(C)(2) (emphasis added).
There are five specific exceptions to this mandatory directive — where disclosure would “jeopardize an ongoing investigation, endanger the safety of an individual, disclose the identity of a human source, interfere with a human source’s cooperation, or reveal legally privileged information.” Id. If one of these exceptions applies, the Guidelines, again using mandatory language, require that “whenever feasible, the FBI office shall make at least limited disclosure to a law enforcement agency or agencies having jurisdiction, and full disclosure shall be made as soon as the need for restricting disclosure is no longer present.” Id. (emphasis added). The Guidelines therefore “specifically prescriben a course of action for an employee to follow,” and “the employee has no rightful option but to adhere to the directive.” Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. Because that is so, failing to inform local law enforcement of the kind of serious, specific threat made here was in no way a discretionary act.
The Guidelines do require that FBI field officers make certain evaluations — whether information is “credible,” whether it relates to “serious criminal activity,” and whether the exceptions do or do not apply. But any regulation that sets out criteria for action requires that the responsible government officials determine whether those criteria are or are not satisfied. An otherwise mandatory policy does not become discretionary because it applies only in certain specified circumstances or because it has clearly laid out exceptions. If it did, then no “federal statute, regulation, or policy” Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954, would survive the discretionary function exception; every such proscription is limited to described circumstances, and the responsible employees have to decide whether those circumstances obtain.
In Tobar v. United States, for instance, we held that a Coast Guard enforcement manual was mandatory under the first Berkovitz prong. 731 F.3d 938, 945-47 (9th Cir.2013). The enforcement manual stated that “[i]f there are no drugs on board, and there are damages or losses sustained by the vessel, in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated, as long as neither the vessel nor the crew have been involved in illicit actions.” Id. at 946. That directive is essentially identical in structure to the Guidelines at issue in this case. It provides that when certain conditions exist — damages or losses sustained by the vessel — federal employees “will”— using mandatory language — take a specific action (compensating the owner) unless (exceptions) particular circumstances exist (involvement by the vessel or the crew in illicit actions). A Coast Guard employee would have to make several evaluations to follow this policy — (1) whether the compensation requested is “in accordance to the U.S. laws”; (2) how to provide compensation “in a manner complying with international laws”; (3) what it means to be *1040 “involved” in illicit actions in the past, and (4) whether a particular action was “illicit.” The need for such evaluations, which could be fairly complex, did not convert the mandatory compensation requirement in the Coast Guard manual into a discretionary policy. Id. The holding of Tobar, in other words, is that a policy is not discretionary simply because it directs an employee “do x, unless y.” Yet, that is what the majority holds here.
In contrast, the cases in which we have found that policy manuals do set out discretionary criteria, not mandatory directives, have pointed to specific indices that the established policy at issue “d[id] not prescribe courses of action that must be followed.” Sabow v. United States, 93 F.3d 1445, 1452 (9th Cir.1996); see also Weissich v. United States, 4 F.3d 810, 813— 14 (9th Cir.1993). In Sabow, for instance, the manual stated that “the circumstances of a particular case will naturally govern the actions taken to protect and preserve the physical evidence,” and noted that its provisions were simply “considered generally valid guides.” Sabow, 93 F.3d at 1452. In Weissich, the policy specified that “[a] warning is not required in every case,” and that whether to issue a warning “depends upon a selective case-by-case evaluation,” based on a non-exhaustive list of factors. Weissich, 4 F.3d at 813.
Most recently, in Chadd v. United States, 794 F.3d 1104 (9th Cir.2015), we found a National Park policy discretionary in the public safety context where the relevant manual specified that “[t]he means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level,” and that where a certain animal species creates a safety hazard, it “will be managed — up to and including eradication — if ... control is prudent and feasible.” Id. at 1110. These policies, we concluded, “impose[] no particular, mandatory course of action.” Id.
The majority ignores the determinative distinction in our case law between policies that direct mandatory actions absent an applicable exception and those that lay out general criteria for discretionary actions. It then goes on to cite Sabow for the proposition that “the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations.” Sabow, 93 F.3d at 1453. But here, the relevant, mandatory language in the FBI disclosure provision is central to the directive, not “isolated.” And the majority points to no language at all indicating that these Guidelines should be considered “suggestive.” Without anything like the explicit invocation of “discretion” in Chadd or the “case-by-case evaluation” language in Weissich, the FBI’s prescribed policy is that serious, substantiated threats — which these clearly were— are required to be communicated to local law enforcement absent an applicable exception. See Chadd, 794 F.3d at 1110; Weissich, 4 F.3d at 813; see also In re Glacier Bay, 71 F.3d 1447, 1452-53 (9th Cir.1995).
Moreover, and critically, Vickers v. United States, 228 F.3d 944 (9th Cir.2000), also cited by the majority, adds an important consideration applicable here: Reporting requirements can be mandatory even if they coexist in policy guidelines alongside discretionary functions, like investigation. Id. at 953; see also Navarette v. United States, 500 F.3d 914, 917 (9th Cir.2007). Responding to a similar claim of discretionary function to the one made' here, Vickers held that “although INS investigators undoubtedly enjoy discretion in the conduct of an investigation, this discretion does not extend to the question of whether to report to superiors or to investigate at *1041 all an allegation of misuse of Service-issued firearms,” where policy guidelines made such reporting, and some investigation, mandatory. Vickers, 228 F.3d at 953 (emphasis in original).
Here, it is the failure to disclose — that is, report — the threat that is at issue, not the failure to conduct an adequate investigation into those threats, that is the crux of Gonzalez’s suit. Gonzalez’s complaint is only that the FBI did not report to local law enforcement information already in its possession, as its mandatory Guidelines required. The majority’s mantra that this case concerns “investigation and prosecution of crime” is thus simply wrong, and its voluminous citations to the discretionary nature of criminal investigations and prosecution are similarly beside the point.
In sum: Any mandatory policy will require some degree of interpretation by those who must apply it. If the government were deemed to exercise the kind of “discretion” contemplated by the discretionary function exemption every time an employee is required to read and apply stipulated considerations that, if they exist, require that certain steps be taken, all, or nearly all, otherwise mandatory government policies would become discretionary.
I would hold that the FBI’s Guidelines here at issue are mandatory. The FTCA’s discretionary function exception is therefore not applicable at all to Gonzalez’s claim that the FBI negligently failed to disclose to local law enforcement threats that, under the agency’s policies, should have been conveyed.
B
Even if the exceptions to the FBI’s mandatory disclosure policy did make decisions under those exceptions discretionary with respect to the FTCA, the Government still must prove that those exceptions in some sense were implicated here. The Government bears the burden of proving the discretionary function exception applies, Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir.2008). It cannot meet that burden by simply saying — without any evidence — that the Guidelines’ exceptions might have applied. Although this Court has held that a decision “need not be actually grounded in policy considerations” for the discretionary function exception to apply, Miller, 163 F.3d at 593,[2] we have never held that the Government need not affirmatively invoke the discretionary aspects of a hybrid policy — that is, one that is generally mandatory, but has limited exceptions.
Miller itself well illustrates that the Government must at least invoke the discretion-granting exceptions to an otherwise mandatory policy apply. In Miller, property owners sued the Forest Service for damages to their property caused by a forest fire escaping from a National Forest. 163 F.3d at 592. The court noted mandatory language in the Forest Service’s guidelines about how Forest Service *1042 employees should fight fires, id. at 594, but held that the discretionary function applied nonetheless. Miller so concluded in part because the guidelines also noted that in “multiple fire situation[s],” limited resources meant that employees should only “attempt” to follow their preplanned response, which conferred discretion on the Forest Service as to how best to allocate resources. Id. at 594-95 (emphasis in original). Miller thus contains a hybrid policy similar to the Guidelines, as construed by the majority: Mandatory language required government officials to do x, with an exception for specified situations, as to which the policy granted discretion and so triggered the discretionary function exception.
But in Miller it was clear that the exception was the applicable provision— there had been multiple forest fires going on in the same region on the same day. Id. at 592. The majority’s logic here would amount to a stance that in Miller, because there might have been another fire on the same day, in which case the exception would apply, the Government could invoke the discretionary function exception even if there was no second fire, and no one thought there was. That is, the Government could prevail because if it had taken action based on the belief there were two fires, it would have had discretion as to what to do.
Such a fantasy-grounded approach would severely undermine a central purpose of the FTCA, namely, the compensation of individuals who might otherwise be left “destitute or grievously harmed” by the improper implementation of government policy. Rayonier Inc. v. United States, 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). There are a great many policies that, like the one in Miller, contain exceptions that, during emergencies or other special circumstances, grant more discretion to the government employees than they otherwise enjoy. The Army’s Snow Removal Policy held mandatory in Bolt v. United States, 509 F.3d 1028 (9th Cir.2007), contained a provision that it was “subject to change during emergency situations.” Id. at 1033. The Department of Health and Human Services’ regulations for laboratories that handle toxins and dangerous biological agents allow waivers during “domestic or foreign public health emergenc[ies].” 42 C.F.R. § 73.5(e). The discretionary function exception would swallow the FTCA if these provisions — in the absence even of an asserted emergency — were held to mean that the government is not liable for negligence in its day-to-day clearing of snow, as in Bolt, or in the licensing of laboratories, as in Berkovitz.
Here, unlike in Miller, the Government has not made any showing that the exceptions apply; that any government employee thought they did; or even that any FBI employee considered whether they did. Gonzalez maintains that the information was just lost — an action that does not suggest that any FBI employee believed the Guidelines applied. The majority is therefore wrong to apply Miller’s principle to this case.
Citing Gaubert, the majority argues that because the Guidelines’ exceptions permit discretion (which, as I have explained, I am assuming in this section is true, although I do not think it is), we must presume that the FBI’s actions “were grounded in policy considerations.” But applying that presumption here jumps the gun, as it assumes, with no proof at all, that the Government was acting pursuant to one of the exceptions, and not pursuant to the generally applicable mandatory reporting requirement.
Moreover, even if the majority is correct that the FBI is entitled to a presumption in its favor that it was acting pursuant to *1043 discretion-granting exceptions to a mandatory rule, that would not end the case. Instead, Gonzalez should have an opportunity to rebut this presumption, which would require discovery. Her' complaint asserts that the Government was not acting to such an exception, but instead simply lost the information. We have previously held that, in a ruling challenging subject matter jurisdiction under the FTCA, “the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.” Augustine, 704 F.2d at 1077; see also Young v. United States, 769 F.3d 1047, 1052-53 (9th Cir.2014). As a result, “the jurisdictional determination should await a determination of the relevant facts.” Young, 769 F.3d at 1053 (quoting Augustine, 704 F.2d at 1077). The relevant facts include, at a minimum, whether the FBI actually invoked the exceptions to the Guidelines in some way, or whether it just lost the information, as Gonzalez alleges. Because the FBI is, most likely, the only entity with this information, the district court should have granted Gonzalez at least minimal jurisdictional discovery with regard to these facts.
C
Finally, even if the majority is otherwise correct, I would still reverse, as the FBI’s decisions under the relevant section of the Guidelines do not qualify as discretionary acts “grounded in social, economic, and political policy.” Young, 769 F.3d at 1053 (quoting Berkovitz, 486 U.S. at 537, 108 S.Ct. 1954).
Our precedent has long recognized that “matters of scientific and professional judgment — particularly judgments concerning safety — are rarely considered to be susceptible to social, economic, or political policy.” Whisnant v. United States, 400 F.3d 1177, 1182 (9th Cir.2005). The majority states that the Guidelines’ considerations governing reporting serious, credible threats to local law enforcement “implicate social, economic, and political judgments,” but does not support this conclusion. Instead, the majority repeatedly treats this case as if it asks us to .review an FBI investigation, concluding that Agent Andersen’s actions entailed “social, economic, and political” policy judgments, rather than professional ones, because “[t]he investigation and prosecution of crime involves policy judgments at the core of the executive branch.”
But, once again, the FBI’s investigation and prosecution responsibilities have nothing to do with this case. We have not been asked to determine whether Agent Andersen, or any other FBI employee, was negligent in the investigation or prosecution of a crime. The issue before us is whether an FBI employee negligently failed to disclose information already in its hands to local law enforcement. The majority’s concerns regarding deference to FBI enforcement priorities are just not relevant.
The FTCA protects the public by helping to ensure the Government is attentive to its own policies, and by allowing compensation for those injured by the Government’s negligence, where enunciated policies are not followed. In one sense, it is too late for Gina Gonzalez to benefit from the attentiveness the Government should have paid to threats affecting her and her family, as her husband and child are lost to her. But her claim for compensation should go forward. I respectfully dissent.

. This case was decided below on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court did not grant jurisdictional discovery, so we take Gonzalez’s allegations as true. See Sabow v. United States, 93 F.3d 1445, 1449 (9th Cir.1996); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983).

. I have previously criticized this statement in Miller as contradicting the Supreme Court’s holding in Gaubert — viz., that the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy.” Chadd v. United States, 794 F.3d 1104, 1114 (9th Cir.2015) (Berzon, J., concurring) (emphasis added in Chadd) (quoting Gaubert, 499 U.S. at 323, 111 S.Ct. 1267). I continue to believe that the holding of Miller should be reconsidered en banc, for the reasons stated in my Chadd concurrence. Because Miller does not, in my view, apply to a hybrid policy such as the one here, this case does not require us to consider whether Miller should be revisited, as I suggested in Chadd. That Miller is of questionable validity does, however, reinforce my conclusion that it should not be expanded to cover hybrid mandatory/discretionary policies such as the Guidelines here.